Good morning, Your Honors, and may it please the Court, my name is McCade Claypool, and I represent Plaintiff Appellant Norma Eisenman, and I'd like to reserve three minutes for rebuttal. Counsel, please be reminded that the time shown on the clock is your total time remaining. Thank you, Your Honor. This case involves false arrests and excessive force claims arising from Ms. Eisenman's U-turn in 2021 and the violent events that followed after that. Ms. Eisenman made a U-turn that was lawful to avoid stopped traffic, but the defendants, who were behind her in unmarked covert Dodge and Chevy pickup trucks, thought she was fleeing the police. So they rammed her vehicle to the curb, shattered her window, and pulled her out at gunpoint. She was then held on the curb for 30 minutes, while officers assured her she was jailbound, after which she was held for 16 more hours until being released with no charges. The defendants claimed that their conduct was justified, that they had probable cause to arrest her, and that the force was reasonable. The problem, however, is that the facts that support those claims are highly and heavily disputed, and the remaining undisputed facts don't support those claims. And for that reason, this Court should reverse and remand the district court's grant of summary judgment for defendants. Did you litigate this case below? I didn't, Your Honor. Okay. Can you tell us whether the lawyer or lawyers that did presented the district court with evidence that the conduct violated clearly established law? Your Honor, my understanding is that Ms. Eisenman was pro se and represented herself, and the district court did not reach the clearly established issue. I think this is ER 26 footnote 7. The court said that he decided on the merits without reaching that issue. So it wasn't fully briefed below.  So starting with probable cause, this Court has made clear that when it comes to probable cause, summary judgment is inappropriate if there are disputed facts or if a reasonable jury could find that there was a lack of probable cause. You left out one tiny little fact in your description. She had her grandson in the car. She did, Your Honor. And there was an outstanding parole violation warrant, and law enforcement was looking for him, and they knew he was in the car. That was the reason, whether it's justified constitutionally or not, that was the reason for the stop. Yes. You're right, Your Honor. And the question in this case is whether the force and the arrest of Ms. Eisenman was constitutional, notwithstanding her grandson being in the back seat. And what So, Counsel, is it your position that we have to look at those separately? We have to look at Ms. Eisenman separately from her grandson? The Constitution does protect individual rights, Your Honor. And so when it comes to assessing the force that was used or whether the defendant or whether the defendants had probable cause to arrest Ms. Eisenman, it is a more individualized inquiry. There may be situations in which his presence mattered, but as I can explain, I don't think it really matters for purposes of this case. And so on the probable cause, the district court below relied on heavily disputed facts in the defendant's favor to say that there was lights that were turned on, that there was tapping, that there was contact during the U-turn. But each of those facts were heavily disputed and can't support summary judgment. Counsel, you said it doesn't matter in this context. Are you saying it doesn't matter whether or not they had probable cause to arrest her grandson? Correct, Your Honor, because this is a false arrest claim against Ms. Eisenman. She wasn't raising claims against her grandson. So there may have been probable cause to arrest her grandson, but the question is whether there was probable cause to arrest her. How long was she detained? She was detained for 30 minutes after the grandson was taken away and then another 16 hours in a jail cell. Handcuffed the whole time? Handcuffed the whole time, yes, Your Honor. And so what happened with the, on appeal now, defendants, they concede that all of the facts that the district court relied on below were in fact disputed. And instead they say, well, it's enough that the grandson was in the car, that the U-turn was mid-block, and also that the officers were behind. But the critical fact of this case that isn't disputed is that the officers were in unmarked Dodge and Chevy pickup trucks, white, tan, silver, I think it was in maybe, I'm forgetting the fourth color. But these vehicles were intended to be undiscovered. And unless the officers did something to let Miss Eisenman know that they were there, there was no way that they could have reasonably believed that her conduct was in response to their presence. The officers knew that the grandson was in the car?  And obviously Grandma knew that grandson was in the car? Yes. Would it be unreasonable for the officers to assume when she made the U-turn that she was evading arrest of her grandson? No, Your Honor, I don't think so, for a couple of reasons. First, they knew that Skyler Michelson was in the backseat, that he didn't have control of the vehicle. But more importantly, because the officers were in these unmarked cars that had normal license plates, intentionally hidden lights, there was no way for Miss Eisenman to know that the officers were there. And so while it's not necessarily what she knew, the question is what indicated to the officers that she was aware they were there? And that's one reason why under Arizona law, unlawful flight specifically says that when a law enforcement vehicle is unmarked, there has to be some evidence that the individual knew that law enforcement was behind them. And there simply isn't that. And so on the probable cause, whether you look at the disputed facts like the court did, or you look at the remaining undisputed facts, there's simply not enough for a reasonable officer to say that she was trying to flee the police. Moving on to excessive force, we have sort of three types of excessive force that we've identified in our briefs that I think are important to talk about. The first is Miss Eisenman being pulled from her vehicle at gunpoint. This court has said very clearly that being held at gunpoint is a highly intrusive means of force. And that unless an individual is armed or not cooperating or dangerous, that use of force is excessive. These are cases like Green that clearly established this and Washington that I think actually Judge Hawkins, you were on the panel in Washington v. Lambert with some of your colleagues. But these cases make clear that that kind of force is excessive. The second kind of force... Let me ask you this. Is it your position that the district court erred by concluding the plaintiff failed to state a claim for excessive force against Detective Angris? If that's true, why shouldn't we hold that you forfeited that issue by failing to raise it until your reply brief was filed? So, Your Honor, we... I guess I'll take your questions in reverse order. So we raised the gunpoint in the opening brief, so it's not forfeited because it was just raised in the reply brief. But more importantly, we do think that the district court erred when he because on, I think it's paragraph 86 or 85 on ER 216 of the complaint, Ms. Eisenman specifically says that because she was held at gunpoint, that was an excessive force that violated the Fourth Amendment. And so the district court should have included an excessive force claim against Anglis because this court's precedent is clear that that is a fairly blatant use of force, especially... Using the firearm per se is enough. Sorry, Your Honor, can you repeat that? The use of the firearm, the brandishing of the firearm was enough. According to this court's precedent, pointing a firearm at an unarmed, cooperative, non-dangerous individual has been held to be excessive force. And this is a gun... Which case do you refer to? Yeah, so this is Green versus, I think, County and City of San Francisco, maybe. Washington versus Lambert is also another one. We have the United States versus Del Vizo, Hopkins versus Bovichino. There are numerous cases where they have very similar fact patterns, an outnumbered individual who is held at gunpoint and is not resisting arrest or otherwise armed. And so that's the first excessive force that I think the district court erred on. The second is the ramming. And with the ramming and the window shattering, it gets a little bit more complicated because there are disputed facts. And so where we have disputed facts, this court has made clear that summary judgment is also inappropriate. The reason why the defendants thought that it was okay to ram Ms. Eisenman's vehicle to the curb was because she was trying to evade the police, that the U-turn was abrupt. But as we just discussed a little bit ago, all of those facts are in dispute. And so excessive force claims, as this court has said, is typically a jury question because they are very fact-sensitive. But and so we're here. There are disputed facts. The court should not have ruled in defendant's favor on the summary judgment issue.  The brief on appeal is your brief. Yes. Does it argue error in failing to analyze the excessive force claim by the district court? As to the guns, Your Honor, or as to the ramming or the window shattering? Just excessive force in general. Yes, Your Honor, it does. Okay. And specifically our argument is that the district court relied on disputed facts and granted summary judgment in the movant's favor, which was not something that it should have done. And then just to sort of move on to the next and last piece of force, we also have the window shattering. And with this window shattering, the two reasons or justified need that the defendants gave was tinted windows and a fear of weapons. But the other officer's own testimony makes or at least undercuts the tintedness of the windows and whether they could see in. And also there is no objective evidence that there were guns in the vehicle. In fact, Mr. Michelson, while he had dangerously evaded the police several times, never were there firearms involved. And so the need to shatter a window was simply not there. But that was their fear, though, right, that the grandson might be armed? That is what Officer Bennett stated in his declaration that he filed with the litigation a couple years later. But I think more importantly, this Court has sort of made clear that excessive force is an objective inquiry. What the facts and circumstances are in the officer's mind based on sort of objective facts and where there's nothing to support Officer Bennett's belief that there were firearms in the car, that subjective intent is or subjective belief simply isn't enough to justify. And so I'm happy to discuss any of the other issues that the Court has. But for those reasons, we would ask that the Court reverse and remand because the disputed facts make it such that there was at least a jury could find that there was a lack of probable cause and that the force used here was excessive. Thank you, Counsel. We'll hear from defendants. May it please the Court? My name is Jennifer Rethemeier. I represent defendants Appelese, Sergeant Brooks, Detective Bennett, and Detective Englis. Ms. Eisenman's overarching argument on appeal is that this Court must disregard Michelson's role in these events. That is incorrect. I'll take the claims in the same order that Appellant's counsel did, starting with false arrest. Detective Englis reasonably believed that Ms. Eisenman had committed a crime, and as a result, there was probable cause for any arrest that ensued. What was the crime, Counsel? Fleeing the police. And I do want to point out in particular that under Arizona law, it is not an element of that crime that the lights for the police vehicle be activated. In Ms. Eisenman's reply brief, she cites a case called Faura v. City of Placentia for the notion that there can't be probable cause if the police lights are not activated. That case came out of California and was decided under California law where it is an element of the crime that the lights be activated, and that is why that case is inapposite. There also there wasn't the factor of Michelson, who was looking over his shoulder and is the exact reason why Ms. Eisenman would have known that there is a police vehicle behind her. Counsel, how would she have known that there was a police vehicle behind her if the vehicles were unmarked and there were no lights on them? So looking at this from the officer's perspective, as we must, he knew that Michelson was in the vehicle and that having evaded police dangerously earlier that same day, he had every reason to be looking over his shoulder. And upon seeing five trucks converge all of a sudden behind her with lights in the so they're in the windshield instead of being on top, but they're still there. So upon seeing this display of vehicles, he would have looked back, seen that, and instructed Ms. Eisenman to flee. That's where the knowledge would come from. Counsel, is this a disputed issue of fact? No. We have taken disputed issues of fact clear out of this in our briefing by simply accepting Ms. Eisenman's version of events, even when it was in litigation-related statements. Well, she said that she didn't know that there were police officers. So why doesn't that create a dispute of fact? Because we look at probable cause from the perspective of the officer and what he knew. And the police officer knew. But don't we look at fleeing in terms of what the person who's charged with fleeing knows or reasonably should have known? So for the probable cause inquiry, no. That is from the officer's perspective. And the facts available to the officer were that Michelson was in the vehicle and had every reason to be looking behind him where he could have noticed and then alerted Ms. Eisenman that these were police vehicles. During the stop, did she evidence knowledge that her grandson was in trouble? Well, yes, but that's a disputed fact, so we have not relied upon it in our briefing. So there was an interview conducted, I believe it was by Officer Cox, just after she had been taken into custody. And there she admitted that Michelson had yelled at her to flee, and that's why she did the U-turn. We have not relied on that in our briefing because in her deposition, she denied that that was the case. So we have taken that dispute of fact out of play. But doesn't that, in and of itself, create a disputed fact, that she said one thing at one time and another thing at another time? So it doesn't because from the perspective of Detective Inguis, he knew that there was a reason for her to know that it was a police vehicle behind her and that that explains the U-turn, and that's where we have probable cause. Counsel, could you move to the excessive force part of this, if you're done discussing the probable cause? Of course. So, again, Appellant's counsel would like to create a fact question here, but we have taken fact questions out of play by using Ms. Eisenman's version of events. And in addition to that, once the facts are construed in favor of the plaintiff, it is a pure question of law as to whether the officer's actions were reasonable. That's Scott v. Harris. So here we have a balancing test. We have, you know, the reasonableness of the officer's actions against the government interest. And the Court is allowed to consider Michelson's actions in that. That is one side of the equation, is the need in government interest to capture a fugitive who was wanted by Georgia and who had dangerously evaded police twice earlier that day. Excuse me, once earlier that day. What about the period of time after he was taken away? So he was no longer part of the equation at that point. Would you agree? So he was secured following the stop and the removal of the occupants of the vehicle, he was secured. And so, but wasn't she detained after that part in handcuffs, after he was removed? Do you agree with that?  And so what was the basis for keeping her handcuffed after he was removed? So as to excessive force, which I believe we're still on, because Ms. Eisenman in our view did not even assert an excessive force claim against Detective Inguis, and of course the screening order did not find that there was an excessive force claim against Detective Inguis, I don't represent him in connection with such a claim, and I'm limited in how I can respond. But I can direct the court to the screening order. At ER 180 to 181, it discusses what constitutes a, or excuse me, it describes how Ms. Eisenman stated an excessive force claim, and it states that it is only against Detective Brooks, and it is in connection with ramming the vehicle. Could a reasonable jury have concluded that the officers were justified in stopping her vehicle because they reasonably thought she was helping her grandson evade arrest? They knew he was in the car, right? Yes, absolutely. And that's where we have argued that there was probable cause for any arrest that occurred on Detective Inguis' watch and subsequently resulting in her being in custody for 16 hours. Wouldn't the level of her knowledge about her son's law enforcement problems, if we can call it that, go to that issue, whether the officers reasonably believed she was evading arrest? It could if the officers knew that at the time. And under the probable cause standard, it is a question of what the officer knew in that moment, making a split-second decision. Okay. So at some point, her custody was handed over to other officers. Correct. Do you represent those officers? I do not. They are not defendants in this matter. I'll turn then to the use of the window tool by Detective Bennett. This is reasonable because we are talking about a very minimal incursion of property damage in exchange for officer safety. Traffic stops are shockingly dangerous for officers, as the Supreme Court has detailed on certain occasions, including Marilyn v. Wilson. Here, appellant's counsel talked about whether there was a gun in the car. And, well, there wasn't necessarily firm reason to believe there was a gun in the  But, really, it's a matter of whether there is a weapon in the car. And that's defined far more broadly. He knows that Michelson had endangered specifically officer safety earlier that same day. And I would argue with a weapon. A car can be used as a deadly weapon. But if the car is the deadly weapon, why would you need to shatter the windows? So, obviously, that would not be the case here. It goes to knowing that there was an occupant of the vehicle who did not respect officer safety. And so not knowing what objects may be in the vehicle that could be used as a weapon, it was reasonable of Detective Bennett to use the window breaking tool and incur $198 worth of damage. Was there any historical evidence that Michelson had displayed weapons before or had possessed weapons? Did the officers have any knowledge of that to that degree? So, not in the record. That said, they were not able to search him on the two occasions when he sped off, endangering bystanders, you know, and officers alike. And I'll conclude by turning over to Qualified Immunities. Before we leave the window shattering, the rationale for shattering the window was to make sure they had visibility into the car. But wasn't there a statement that one of the officers had seen Michelson lean forward, and wouldn't that contradict the rationale that they needed to see into the car? As a threshold matter, Ms. Eisenman has never stated that the windows were not tinted. Instead, she points to this seeming contradiction in the testimony. That wasn't my question. My question was, isn't that inconsistent for one officer to say that the window was shattered because they needed visibility into the vehicle, and another officer to say they had already spied Mr. Michelson leaning forward in the car, which would tend to indicate that there was visibility? It is not inconsistent, because window tinting is not all or nothing. A window can be tinted to a degree that a person from the outside could see a bigger object, or we'll say a person, moving in the vehicle, but didn't have the visibility to see smaller items, such as objects or weapons located in the back seat of the vehicle. It's also the case that Detective Bennett had to operate, make this decision in a split second. They very quickly removed the occupants of the vehicle, again, for safety, and were successful in doing so. This was a high-risk stop where no shots were fired and no physical injuries were incurred. So in that split second, he decided to go ahead and use the window-breaking tool. And, of course, felons have not identified any clearly established case law. Despite being put to that task, they did not below and they did not on appeal establish any sort of case law holding that these things the officers did were clearly unlawful. Is it your position that qualified immunity is your best defense? It's my opinion that probable cause is the best defense to the false arrest claim, and also that there was no constitutional violation as to the excessive force. I also think that qualified immunity is also a ground on which this court can rule. Although Ms. Eisenman asserted in her reply brief that this court should decline to reach that issue, Ms. Eisenman admits that this court has the discretion to do so, and we urge the court to go ahead and rule on that issue if they find a constitutional violation. It is a pure question of law, and were this matter to be remanded for a decision by the district court, the parties would simply appeal right back here and make the same argument on the same record on the same issue. And in fact, because the district court decision would be reviewed de novo, it would have limited effect also for that reason. As for further questions, we ask that the court affirm the judgment. Thank you, counsel. Rebuttal? Your Honor, I just want to say a couple points to correct some factual misstatements, but also to clarify some of the issues. Starting with probable cause, one thing that my friend on the other side said was that Michelson had to have been looking over his shoulder. Unfortunately, there's no support of that in the record. It's a pure speculation, and in fact, one of the disputed facts is that Michelson was aware of the officers and tapped Ms. Eisenman on the shoulder. That, unfortunately, is not in the record, at least for defendants, and so it can't be relied on for summary judgment. The second thing, Judge Rawlinson, you asked, you know, is it true that Michelson was no longer part of the equation, especially after the vehicle was stopped and he was pulled from the vehicle, and that's absolutely true. He was pulled away and she was held for another 30 minutes on the curb. And so when we started off this conversation saying that Michelson, you know, was he there, was he part of, you know, the situations, yes. But between the force being directed at Ms. Eisenman and then Michelson being taken away, that's one reason why his presence does not necessarily change the equation when it comes to the probable cause and the excessive force against Ms. Eisenman. Judge Hawkins, you also said, you know, was it okay to stop the vehicle. And one of the things that we have maintained from the beginning is that it was okay to stop the vehicle. The problem, however, is the excessive force used to stop the vehicle, as well as to pull her from the vehicle at gunpoint, and the shattering of the window. So it wasn't the stopping that was unlawful. It was the force used to effectuate that stop, as well as the arrest that followed. One other thing that my friend asks. So are you conceding the probable cause point? No. No, Your Honor. No, Your Honor. And I'm forgetting the case off the top of my head, but generally this Court has held that when someone, when there's a person in the car, it's all right to stop the vehicle. The question, though, here is whether they could have used that force, and specifically whether their reason for stopping the vehicle, Ms. Eisenman fleeing the police, whether there was probable cause. And so that's a separate issue. So opposing counsel said that you look at the facts in view of the reasonable officer's perspective. So do you agree that the perspective of the person who is accused of fleeing has no role in that analysis? No, Your Honor. As a general matter, yes, probable cause is from the reasonable officer's perspective, but it's an objective test. And in order to figure out what facts and circumstances were in an objective officer's view, we can look at the testimony of Ms. Eisenman. For example, she said there were no lights. That is what creates a disputed fact as to whether there were lights. But I think more importantly, you know, we had mentioned, I think, the California law and VORA. Here in Arizona, the law is that when there's an unmarked vehicle, you cannot be convicted of fleeing the police unless there is evidence that the individual was aware that the unmarked vehicle was law enforcement. And so that has to play into this analysis of whether or not there was fleeing the police. And here it's at least disputed that Ms. Eisenman had any awareness. Going to the last point about qualified immunity, I just wanted to say that my friend on the other side had mentioned that we didn't point to any clearly established law, which is not true. For probable cause, we pointed to the VORA case. For the arrest, we pointed to Green and Washington. And it is true that we did not find necessarily any cases as to the ramming and the shattering that are sort of clearly on point. However, this Court has been clear that when there are disputed facts that underlie the qualified immunity analysis, qualified immunity itself cannot be decided at summary judgment. And so for the ramming and for the window shattering, that's something that this Court can't decide. And the very last thing is physical injury. Ms. Eisenman did, in fact, experience significant psychological trauma as well as her passenger. And so for that, we ask the Court to reverse. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the Court. The next case on calendar for argument is Sococcio v. City of Phoenix. Do we know how they got this case pro bono? Before you leave, counsel, we would like to thank you so much for taking on this case pro bono. Were you appointed by the Court? I was. Thank you so much. We appreciate that so very much. Thank you for reminding us.
judges: HAWKINS, RAWLINSON, SMITH